UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 688 |
| vs. | ) | |
| | ) | Hon. Rebecca R. Pallmeyer |
| JOSE BANKS | ) | |

## SENTENCING MEMORANDUM

COMES NOW the defendant, JOSE BANKS ("Mr. Banks"), by and through his attorneys, Beau B. Brindley and Michael J. Thompson, and requests that this Court impose a sentence below the recommended guideline range.

**I.      District Courts Have Broad Discretion To Deviate From The Guidelines For The Purpose Of Imposing A Fair And Just Sentence.**

When determining the appropriate sentence for an individual defendant, a sentencing court should impose the shortest possible sentence that   (A) reflects "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (B) deters future criminal conduct; (C) protects the public from the defendant; and (D) provides the defendant with the "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553. When determining whether a given sentence is sufficient to effectuate these purposes district courts are directed to consider:

1.    "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a);
2.    "the kinds of sentences available," 18 U.S.C. § 3553(a);
3.    the defendant's Guidelines range;
4.    any relevant policy statements;
5.    "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a);
6.    "the need to provide restitution to any victims of the offense,"  18 U.S.C. § 3553(a).

A defendant's guideline range is advisory. *United States v. Booker,* 543 U.S. 220, 244 (2005). Under *Booker* and its progeny sentencing courts may not treat the applicable guideline range as presumptively reasonable. *Nelson v. United States,* 129 S.Ct. 890, 891 (2009). Instead, the advisory guideline range is a single factor to be taken into consideration along with the other factors listed in 18 U.S.C. § 3553(a). *Kimbrough v. United States,* 552 U.S. 85, 92 (2007). In the pursuit of a just sentence, district courts may devise policies and impose sentences that are at odds with the policies articulated by the Federal Sentencing Guidelines. *Spears v. United States,* 129 S. Ct. 840 (2009). Therefore, § 3553 mandates that district courts impose a sentence "no longer than necessary" to accomplish the purposes of punishment in 18 U.S.C. § 3553(a)(2), even where that sentence falls far below the applicable guideline range. In Mr. Cotton's case, there is no reason to believe that a sentence greater than 120 months' incarceration in necessary to effectuate the purposes of punishment outlined in § 3553(a), regardless of the Guidelines range ultimately determined by the Court.

### A. History and Characteristics

Mr. Banks's case is tragic one to say the least. To begin with, much of the evidence presented against Mr. Banks at trial was subject to question and significant doubt. Inherent problems with eyewitness identification, inconsistencies between witness descriptions, and the limited ability of witnesses to observe a disguised perpetrator all created fertile ground for reasonable doubt. Unfortunately, due to an irrational reaction apparently created by the prospect of a trial and the denial of a motion to sever counts, Mr. Banks chose not to utilize counsel or present any defense at all. Without the representation of competent counsel, there is no sense in which society can have confidence in a verdict rendered. The lack of counsel made due process meaningless and the verdict unreliable. Watching Mr. Banks ineffectually represent himself, fail

to do anything in his own defense, and fail to highlight any of the significant problems with the government's case was a profoundly demoralizing experience. Desperate defendants are often led astray by fellow inmates with absurd ideas about jurisdiction and law. The results are always troubling. And, the reality that his conviction is based on evidence that was never meaningfully tested by competent counsel militates against the imposition of a pulverizing sentence like that which the government advocates.

In addition, Mr. Banks possesses an extraordinary amount of potential and artistic talent that, under different circumstances, would bring significant positive contributions to the community. When speaking with Mr. Banks one-on-one, he does not, in any sense, present himself as the hardened criminal described by the government. Instead, he presents himself as a gentle and sensitive person with artistic talents and ideas. The facts on which his conviction is based are hard to reconcile with the calm and sensitive demeanor that Mr. Banks presents on a daily basis. He presents himself much more like an open-minded artist and designer than he does like a dangerous criminal deserving of a = brutal sentence. Like many artists Mr. Banks is subject to bouts of eccentricity (as exposed by his fantastically disastrous decision to pursue the "sovereign citizen" defense), but he is also empathetic, caring, and, despite his bizarre behavior in court, humble.

On its face, Mr. Banks's demeanor seems hard to square with the offense of conviction, his obstinate insistence on the "sovereign citizen" argument, and his decision to escape from federal custody. The undersigned recognizes that, no matter what happens at sentencing, Mr. Banks will likely receive a significant sentence and much of his artistic talent will be lost and wasted in the Federal Bureau of Prisons. All we can ask is that this Court carefully consider Mr. Banks's history and personal characteristics with an eye toward saving as much of Mr. Banks's

potential potential as possible.

Mr. Banks grew up with almost no supervision whatsoever. His mother was institutionalized shortly after his birth. She suffers from schizophrenia and bi-polar disorder. She has had additional children that Mr. Banks reports were taken away from her by DCFS. Mr. Banks's father was absent during his childhood. As a child, Mr. Banks bounced back and forth between his grandmother's residence and the homes of several uncles and aunts. Mr. Banks would experience corporal punishment for misdeeds. He saw the uncle and aunt with whom he lived engage in drunken physical altercations. Mr. Banks had little supervision and lived in a neighborhood where he was steeped in uncertainty, unpredictability, and the potential for disaster.

Mr. Banks's mother would occasionally visit for holidays or be released from the mental institution where she has lived for over three decades. On those occasions, Mr. Banks was afraid of his mother. Mr. Banks's mother would stop taking her medication and commit acts of uncontrolled violence. When Mr. Banks was three years old, his mother escaped from a mental institution, snuck into the house, stabbed Mr. Banks's older brother, and kidnapped Mr. Banks. After several days, family members rescued him and his mother was returned to the mental institution. But damage had been done. During that time his mother was off her medications, Mr. Banks was afraid she would kill him, and he believed she had killed his older brother who she stabbed repeatedly. Mr. Banks's brother is currently serving time for armed robbery in IDOC.

One would think that, based on this experience Mr. Banks would resent or even hate his mother and father. To the contrary, Mr. Banks has successfully reconnected with his absentee father, and even with some of his half-brothers and sisters. At the MCC, Mr. Banks had frequent contact with his half sister and her children. Mr. Banks has one child who was born shortly after

his initial incarceration in this case. Mr. Banks used to be visited regularly by his young son and that son's mother before his visiting privileges were taken away. At this point, Mr. Banks wants nothing more in life than to have the opportunity to see his child outside of prison. He knows it is unlikely that he will be able to see his son before he reaches adulthood, but he desperately wishes to have as many years as possible with him after his release.

Perhaps more impressively, Mr. Banks holds no ill will toward his mother. He knows that she is sick and simply wants her to get better. Before his incarceration, Mr. Banks hoped to succeed in the fashion industry so that he could buy her a house and pay for a full time nurse so that she would not have to spend her entire life in a state run mental institution. When Mr. Banks became an adult, he began visiting his mother every week. The irredeemable menace that the government describes would not have that reaction. That kind of person would not demonstrate forgiveness to a crazy person that stabbed his brother and terrorized him as a child. If the government's advised sentence is imposed by this Court, Mr. Banks will likely never see his mother again. And that is a sentence and a circumstance that he simply does not deserve.

As a young child, Mr. Banks enjoyed school very much. He excelled academically. He also showed an early interest in art and fashion. Because his caregiver at any given moment could not afford name brand-name clothing, Mr. Banks began designing his own clothing brand while in the seventh grade. His fellow classmates started asking him to make them clothing. Mr. Banks particularly enjoyed painting and drawing. His caregivers could not afford the expensive materials that any artist would long for, so Mr. Banks made do with pencil sketches and materials he found in various places. Mr. Banks is largely self-taught, but his artistic talents are extraordinary. Prior to his escape from MCC, one of Mr. Banks's drawings hung in the warden's office. He made bracelets and bangles from random items, which were given as gifts to various

guards and to other inmates' wives and children. Mr. Banks created his own shoes and hat from random items available in custody. He made fashionable spectacles out of coffee filters. His well of talent is extraordinarily deep and impressive. Someone with that kind of talent, who has not actually killed or seriously injured anyone, does not deserve a murderer's sentence of 20 years or more.

**B.     Criminal history**

Admittedly Mr. Banks has a long criminal history. However, a careful consideration of the nature of his prior acts and convictions demonstrates that Mr. Banks's criminal history score far overstates the degree of harm he has actually done to society. Much of Mr. Banks's criminal history involves petty theft and extremely low level drug dealing. It began with a purse theft at age 13. He stole a skateboard that same year. Mr. Banks was placed in juvenile detention for 30 days for each offense. After that. Mr. Banks was expelled from school where he was excelling and placed in an alternative learning program with much lower academic standards and, therefore, less to interest Mr. Banks. Mr. Banks soon dropped out of the alternative program. Mr. Banks admits to turning to drug dealing in order to support himself, and quite frankly, because it was just something everyone in his neighborhood did. It was not wholly Mr. Banks's fault that he found himself in this situation. It was a situation borne out mental illness, poverty, and the neighborhoods that rise up surrounding the underprivileged in this city.

At the age of 16, Mr. Banks had his first serious problem with the law when he stole a bicycle and was caught with 3 grams of cocaine. Mr. Banks's criminal history consists of three additional arrests and convictions for possession of cocaine in the amounts of .3 grams, .3 grams and .6 grams at the ages of 17 and 21. These are not the crimes that make up the criminal background of a violent and dangerous menace to society.

6

Mr. Banks also has several theft-related offenses since the age of 18, including stealing a pair of L.L. Bean pants, the burglary of a bar, the attempted theft of a cash-dispensing machine, and the attempted burglary of a cleaners. While this Court will obviously be the judge of the seriousness of these offenses, none of them suggest a penchant for violence or a vicious disposition that endangers the public such that a sentence greater than 15 years is required to curb it. Mr. Banks also has a conviction for possession of marijuana and a conviction for being a felon in possession of a firearm. The latter conviction is the most alarming. However, the simple possession of a firearm does not suggest the desire to harm anyone with it. In essence, Mr. Banks was convicted of doing something that is a constitutional right for the majority of Americans. He never fired that gun at anyone.

### C. Attempts at reform

After Mr. Banks's conviction for possession of cocaine at the age of 17, he took active steps to improve his life. He took the initiative and obtained his GED. Individuals who plan on living a life of crime have no reason to work for their GED. A GED is not a job requirement in criminal organizations or street gangs. Mr. Banks sought legitimate employment, but because of his now felony record he was unable to secure gainful employment. As a result (and his criminal history confirms), he returned to "dabbling" in drug sales. Thereafter he again attempted a full break from any criminal activity. He began associating exclusively with positive friends and family. He made an effort to reconnect with estranged family members.

More impressively, he started his own clothing line. This was no easy task. He secured investors. He started a corporation, sought and secured local celebrity endorsements, and eventually had his products sold in local stores. He employed children from his neighborhood in order to give them a skill and occupy their time so that they would not get into the same type of

trouble that he did as a youth. Unfortunately, like many artists, he had a less than excellent business sense. The amount of money he was making did not cover the amount of money he was investing in advertising and materials.

He began investing his personal finances. To save his business, which he desperately wanted to succeed, he unfortunately returned, not to his self-taught skills (artistry and sewing), but to the skills he had learned on the street (stealing and drug trafficking). His attempts at starting his own business and pursuing art and fashion design demonstrate that Mr. Banks is not the kind of person who deserves a sentence of 20 or 30 or 40 years. People deserving those sentences are not out in the world trying to make their clothing lines thrive and giving jobs to local youth. Mr. Banks has repeatedly shown that he has a vested interest in becoming a legitimate and successfully person. He desperately wants to be a productive part of the community and to care for even those people that did not care for him as a child.

Mr. Banks's criminal history tells the story of a person who has committed a number of crimes. But it also tells the story of a person who has tried repeatedly, even if unsuccessfully, to overcome the unfortunate conditions of his childhood. Were Mr. Banks born in a different neighborhood with more present parents of means, he likely never would have stolen that first purse. If he had, it is unlikely that he would have done 30 days in juvenile detention for a first offense. Certainly, a skateboard theft between children would not have risen to the level of a criminal offense in a better neighborhood with involved parents and alternative means of settling such problems. Without those two convictions, Mr. Banks would not have been kicked out of school and would have continued to flourish in an academic environment. He would never have needed to turn to drug dealing, and would not have a felony to prevent him from gainful employment. He would have started his fashion line and supplemented it with legitimate work.

He could have even gone to college for design – something that he has always dreamed of doing, but considers too far above of his station in life. All of that would be a possibility for him if not for a bad neighborhood, a mentally ill mother, a missing father, and the harsh realities that this life creates. With his talent, Jose Banks could have been anything he wanted if he was given the opportunities that people with mentally stable parents and good neighborhoods have. Bad luck and circumstances beyond his control intervened to prevent all of that and lead him to this courtroom. And those circumstances are worthy of consideration. The fact that he desperately wants to do better and has demonstrated a willingness to overcome the problems of his past with talent and ingenuity is worthy of consideration. A person willing to do that does not need a sentence greater than 15 years to serve the purposes of punishment set forth under Section 3553.

## II.     Harsh prison conditions

Over the years, Mr. Banks has become a talented artist. He has a creative impulse that he has exercised since his youth. Prison life is not accommodating to the effectuation that desire. In an effort to stretch his creative impulses while in prison, Mr. Banks designed shoes for fellow inmates out of socks and other materials made available to inmates. These "shoes" quickly became popular in the BOP. However, because they did not conform to the BOP clothing requirements they were (understandably) confiscated. The conditions of his confinement have undoubtedly served to quell Mr. Banks's ability to pursue the artistic endeavors to which his unusual artistic talents are suited. This problem has been more pronounced since his escape and the harsh conditions of confinement that resulted from it.

Mr. Banks has and in all likelihood will continue to suffer more than the average incarcerated person. Since Mr. Banks's escape he has been held in various forms of solitary confinement. All parties agree that he as been kept under much harsher conditions than other

inmates. He is confined to a single cell. He gets no time outside. Occasionally, he is allowed to move around in an empty room by himself. For him, that is as good as life gets. He has no access to anything that could be considered an art supply. he has no desk. He has no chair. His sketches of his solitary confinement cell were confiscated as blueprints. The coffee filter glasses he made for his girlfriend were taken away. Every slight attempt he makes to pursue his artistic talent is immediately thwarted by the rules of his confinement, which give him no outlet for the talent that his been his most significant motivation and source of hope throughout his life.

One of the few objects Mr. Banks was allowed in his solitary confinement cell was tissue paper. He began folding the tissue paper into origami-like sculptures to send to his girlfriend and family as presents. The BOP confiscated his tissue paper because he was not using it for its designated purpose. This will be Mr. Banks's life while in prison. Because of the escape, he will always be seen as an escape risk, not as a person. And an escape risk does not get access to artistic supplies or opportunities to pursue artistic talents. An escape risk sits in a room and gets restrictions rather than opportunities.

Under these circumstances, Mr. Banks cannot expect any reasonable outlet through which to express his artistic and creative talents and instincts for the remainder of his incarceration. If the government gets its way, this means that Mr. Banks's artistic talents and motivations will be, for all practical purposes, eliminated. His most positive attributes will be rendered permanent casualties of the offenses of conviction. And, ultimately, this result is not a necessary one. It does not take 20 years of harsh confinement and complete deprivation of artistic outlets to deter someone like Mr. Banks, who has found art and its many forms to be his one source of salvation throughout a life that can only be described as a struggle. The harshness of the confinement he will receive and has received constitutes a factor that should mitigate the

10

amount of time he is required to remain incarcerated. There is no sense in which someone who has escaped, and thereby embarrassed the Bureau of Prisons, will ever receive the same kind of fair treatment and access to prison programs that others receive. Every year in custody for Mr. Banks will be worse than what others experience. The government could argue that this is his fault for escaping. However, while sounding strong and retributive, that argument does not change reality. This man will suffer more in prison than other inmates do because the prison system is imperfect. It is unnecessarily vengeful when embarrassed. And it has the power to impose exceptional suffering on its inmates with basically no recourse. That is what will happen to Mr. Banks. That is what his life will be. It is only a question of how long. In the absence of an actual killing or an actual victim who suffered near-death injuries due to violent acts of Mr. Banks, subjecting him to the kind of suffering and harsh conditions of confinement that he has and will continue to experience for more than 15 years is absolutely unjustified.

II.     **Balancing the 3553 factors**

A.     **Need to protect the community:**

Mr. Banks did escape from federal prison – he is receiving an obstruction of justice enhancement for that act. However, during his flight, he did not harm anyone or commit any other crimes. To make money, he literally helped women load groceries into their cars outside of a Whole Foods in exchange for tips. He stole nothing. He threatened no one. If he is truly the violent menace described by the government, he could have simply stolen whatever money these customers had. He could have stolen cars or threatened people into giving him money or assistance. He did none of this. Instead, Mr. Banks went back to the only neighborhood he had ever known and awaited inevitable arrest. When the agents came roaring in with their flash-bang incendiaries and guns drawn, what did they find? Mr. Banks had no firearm. He had no weapon

11

of any kind. He gave no indication of resistance. That shows that the person he is in reality is not the person the government is talking about in its sentencing submission. The peaceful person they took to jail following the escape is not a person who requires more than 15 years to deter. And that is the person Jose Banks is in the wake of his experiences with the federal justice system.

While there is no way around the imposition of the obstruction of justice enhancement, Mr. Banks thinks it important that this Court know and consider all the facts that led up to the escape. It was Mr. Banks's cellmate, Kenneth Conley, who came up with the plan to escape. It was Conley that used the noise of prison construction to conceal his grinding away at the prison windows so as to allow the ultimate escape. It was Conley who obtained the tools used in this pursuit. And it was Conley who threatened to kill Mr. Banks if he did not assist him or if he told anyone about what he had seen. And Mr. Banks was indeed afraid. Unlike Mr. Banks, Conley had a truly violent background. He had connections to other violent people, which he touted. And he had what appeared to be connections with certain guards at MCC. Mr. Banks believed that Conley had these connections because, despite the grinding and pounding noise of the window being cut away, no one ever challenged Conley. The cell inspections that should have been done were not conducted. Everything Mr. Banks saw suggested that Conley had connections to the guards and that any attempt to thwart Conley's efforts could have resulted in serious injury to Mr. Banks. When Conley told Banks he wanted him to come with him to help him get over a wall (due to a physical problem Conley had), Mr. Banks felt obligated to agree. He does not deny that he constructed the rope and harness that allowed them to escape. He does not deny that he participated in the escape and that, upon separating from Conley, he did not turn himself in. Nonetheless, Mr. Banks wants the court to know that the escape plan was not of his

creation. And he wants the Court to know that he did indeed feel fear of Conley and his apparent connections to prison guards, which contributed to his willingness to escape.

It is worthy of consideration that, when approached by agents, Mr. Banks made no effort to resist. On the other hand, when he was approached, Conley ran from law enforcement, tried to break into a house, and then assaulted police officers in an attempt to get away. These facts support Mr. Banks's position that he did legitimately feel fear and the threat of violence when approached by Conley to assist in the escape. And he did feel as if there was no option of alerting prison guards as they appeared to be complicit in what Conley was doing. Mr. Banks understands that the obstruction of justice sentencing enhancement must be given for his escape. But he asks the Court to take notice of the fact that he made no attempt at violence when apprehended. In fact, he engaged in no acts of violence or threats of violence whatsoever following his escape and, instead, awaited his unavoidable arrest. The government suggests that the escape was somehow threatening. But that is simply not true. Mr. Banks threatened no one. He made no attempt to do so. Hence, the escape cannot be used to elevate bank robberies in which no shot was ever fired and no person seriously harmed to offenses that demand more than 15 years in prison.

Most of Mr. Banks's offenses are quite petty when compared to the present case. Mr. Banks has proven that he has a desire to do better and be better, and use his talents in a legitimate and productive way. He has opted for less violence when more was possible. He has worked to improve his community by providing jobs to otherwise at risk children. The undersigned does not argue that there is nothing about Mr. Banks from which to protect the community. A bank robbery can go wrong. People can get hurt. However, there is nothing in Mr. Banks's history to suggest that a sentence of 20 or 30 or 40 years is necessary to protect the public. Mr. Banks is not

a psychopath. He has never set out to hurt people at any time. He does not have a long history of unrepentant violence that demands that he receive a sentence commensurate to what one gets for first degree murder. The sentences the government asks for amount to the forfeiture of Mr. Banks's life. They are sentences appropriate only for the irredeemable. And there is nothing in Mr. Banks's history that suggests his life should be discarded in that fashion. His past attempts to better himself and pursue his artistry and creativity through legitimate businesses and means demonstrate that he is, by definition, not irredeemable. Thus, a sentence greater than fifteen years is not necessary to protect the public.

### B. The need for rehabilitation

As argued above, Mr. Banks already has immense talent. Unlike several state prison systems, the federal BOP allows for inmate created art, but this is at the discretion of the warden. It is unlikely that Mr. Banks will be allowed such special privileges given his escape. This brings up the very real possibility that Mr. Banks's artistic impulses will stagnate the longer he is held in the prison environment. And that serves no positive purpose. Since he has already demonstrated his desire to productively pursue his art through legitimate means, there is no sense in which it will take more than 15 years to rehabilitate Mr. Banks.

### C. Need for deterrence

Mr. Banks has already suffered considerably as a result this offense. He will likely suffer more during his incarceration. At this point Mr. Banks wants nothing more than to live a simple life making his art, to meet his son outside of prison walls, and to see his mother at least once before she dies. The nature of working in the federal judicial system causes one to become accustomed to extraordinarily high sentences. The unfortunate effect is that we can lose sight of just how long a ten, fifteen or twenty year sentence truly is. Mr. Banks is currently 39 years old.

If Mr. Banks is given 45 years he will be 78 when released (taking into account the 6 years he has already served and assuming he will not get good behavior time based on his escape). He will have lost 45 years of his life – and based on current life expectancy figures almost certainly die in prison. If he is given 15 years he will be 48 when released. He will have lost 15 years of his life. Can anyone say that a 15-year sentence is not sufficient to deter a person from additional criminal acts, that is necessary to give this man more than that? There is no way anyone can prove the necessity of such a sentence. And, pursuant to §3553, that means that any sentence greater than 15 years is inappropriate in this case.

The longest sentence Mr. Banks has ever served before is three years in custody. Consequently, the government has no proof that a sentence five times greater than he has ever suffered before is insufficient to deter him, especially when the years he will serve are going to be under some of the harshest conditions of confinement one can imagine. Under §3553, a sentence has to be necessary to further deterrence if it is to be given. And the question to ask is how the government can prove that a sentence of 20 years or more is necessary but a sentence of 15 years is insufficient. For a defendant who has served ten years before and gone back to committing crimes again, they might have a better argument. But, for someone who never served more than three years in custody before, the idea that more than *fifteen* years is necessary is an absurd one.

**D. Nature of the offense and need to promote respect for the law**

This is perhaps the most difficult factor to consider. Bank robbery is a serious offense. It causes fear in the customers and clerks at the banks. In addition, there is the claim that Mr. Banks struck a bank employee with a firearm. Obviously, physical violence to another is a serious offense. And the fear instilled by bank robbery is also serious, as is an escape from

prison. However, §3553 does not allow us to be overcome by the government's rhetoric or by the unusual nature of a prison escape. The fact that Mr. Banks escaped from prison without harming anyone or even attempting to harm anyone does not make these bank robberies more serious. It does not make a sentence of 15 years for a 39-year-old anything but devastating. And it does not say that a sentence greater that 15 years is necessary for offenses that did not involve any serious injury to anyone and that were, in all reality, routine bank robberies. People who rob banks use threats. That is common. They use what appear to be firearms. That is common. They involve the threat of violence. That is common. There is nothing about these bank robberies that makes them so terrible that they demand more than 15 years. And to think so is to divorce oneself from the reality of how devastating a fifteen-year sentence is.

Nonetheless, the government is asking for 45 years (540 months). Rapists and murderers seldom get sentences of this length. Drug kingpins who sell kilograms and kilograms of substances that addict and kill multiple people almost never receive sentences of this length. People with positions of power in violent street gangs almost never get sentences of this length. For example, in *U.S. v. Handley* (03 CR 90), the alleged enforcer for a street gang (the Insane Deuces), which was indisputably responsible for multiple murders, received a sentence of 20 years. In *U.S. v. Ricky Long* (06 CR 346), an alleged enforcer for a crack house who beat a worker with a stick received a sentence of 15 years. It is surely true that a bank robber who hits a clerk during the course of a bank robbery deserves a long sentence. But with all respect, the federal system seems to have lost track of what constitutes a "long sentence". A long sentence should be devastating but not life ending. Fifteen years is just that. No longer sentence is necessary.

Ever-longer prison sentence have caused those familiar with the federal criminal justice

16

system to become numb to the degree of suffering we necessarily inflict in imposing any prison sentence. This is not necessarily the fault of judges, defense attorneys, or even prosecutors. The need for retribution is a part of human nature. We feel intuitively that injustice deserves punishment just as good acts deserve reward. Long sentences are the norm, not the exception in federal court. And as they become the norm we feel the need to impose ever greater and greater sentences to give ourselves – not the defendants – that sense of justice. But that need is internal to us – and it exponentially replicating to the detriment of justice.

We forget that 15 years is a very, very long time to spend in prison, especially when one considers the conditions under which Mr. Banks can expect to be held. The term advised by the government is totally out of perspective for the crime for which Mr. Banks has been convicted. Forty-five years is nearly a lifetime. For a 39-year old, it is roughly equivalent to a sentence of death.[1] The undersigned entreats this Court to consider whether any of the suffering that Mr. Banks has actually caused another person – however significant and frightening it obviously was– is more or less than the suffering than Mr. Banks will experience during a 15 -year prison sentence, especially under the conditions he will face. And the answer is absolutely not. The few minutes of fear felt by the victims, and even the pain of the assault suffered by the individual struck by the firearm, is not more intense or significant than 15 years in harsh confinement in prison. To say otherwise is to deny reality. Hence, a sentence greater than 15 years is, by definition disproportionate to the crime and unnecessary.

A society with respect for the law is not the same as a society that fears the law. Section 3553 calls upon this court to impose a sentence, not that causes fear, but that causes respect. A legal system worthy of respect is one that is involves mercy just as much as retribution. Many

---

[1] The average life expectancy of an African American male living in Illinois is 69 years.
http://www.worldlifeexpectancy.com/usa/life-expectancy-african-american-male

dictatorships around the globe hold their citizens in fear with draconian punishment for criminal offenses. These systems are not respected. For a justice system to be considered fair and just, it must be one that allows for the possibility of mercy, of understanding, of second chances. Too often those allowances are only given to people with privileged backgrounds.

In many ways, anger is easier than mercy. It takes more courage to forgive a wrong than to punish one. Mercy is about trying to see the whole man, not just one act, and thereby trying to understand an act that is alien to one's nature. It is hard work. There is good and evil in all of people. There are very few people who can be described as wholly evil or irredeemable. And, with his many talents, and the lack of actual violence in his background, there is no sense in which Mr. Banks is among their number. Yet, the government asks that he be locked away from society for the rest of his life. In so doing, they suggest that he is not worthy of that most basic of human rights, the right to hope -- the right to grow and believe that something better may happen in the future. However, serious they may be, none of Mr. Bank's crimes place him in the category of people that deserve such treatment. A sentence of 15 years is enough. Anything greater than that is punishing some idea of what Jose Banks is rather than punishing the man who appears before the Court.

Ultimately, the idea of mercy is rooted in hope. Mercy requires hope on the part of the giver and grants hope to the receiver. Hope is about the future. It is about the belief that, in time, Mr. Banks will become worthy of the potential he has been given. There is a sense in which Mr. Banks is asking nothing more from this Court than the ability to meaningfully hope that the future holds something better for him and that there is a chance for him to turn his life in a positive direction. To allow him to have this hope, the Court must find it in itself to hope for Mr. Banks, to believe that, in the future, he can indeed be better. The truth is that there is no realistic

hope for forty-year-olds who receive 20 years or more in prison. For them, the future does not hold anything better. The chance for turning things in a positive direction is, for all practical purposes, gone. The chance for a better life no longer exists. Due to his talents and his desire to use them in a productive way, Mr. Banks should be given that chance to meaningfully hope. That chance is precisely what a 15-year-sentence affords.

The difficulty in this case is that Mr. Banks has shown himself to be a person who both deserves retribution and is worthy of mercy. He deserves retribution because of the acts he has been convicted of – acts that the government has outlined in great detail. He is worthy of mercy because of the positive ways he has utilized his potential, and enormous reservoir of potential he has yet to fulfill. Mr. Banks is not an unrepentant killer. He is not one who repeatedly engaged in violent altercations and has a history of violence and violent convictions in his past. He purportedly hit a man with the butt of his gun. But the truth is that that kind of assault does not result in sentences of 15 years or more when charged in county courts where such offenses are usually adjudicated. If Mr. Banks had shot a bank employee or beaten him so badly that he suffered serious injuries, perhaps his crime would be so great that a sentence of 20 years or more would be required. But that is not what happened. Despite his offenses, Mr. Banks has turned the deprivations of his childhood into an art that he strives to put to positive use. If mercy is about hope, then Mr. Banks is truly a person for whom we should be hopeful, both for him and for the benefit he can give to society. A sentence of 15 years makes that hope real.

The sentence the government is asking for is one devoid of hope. It is one that would confine Mr. Banks to prison for, if not the rest of his life, at least every productive year he might have left. All Mr. Banks can do now is ask, with humility, for this Court to save as many of those years as it believes justice, tempered by mercy, allows.

The government's recommendation asks this court to toss Mr. Banks's life away – as something already over and unworthy. The government asks this court to give up on Jose Banks. Abraham Lincoln famously stated, "I have always found that mercy bears richer fruits than strict justice." Mr. Banks's case proves the wisdom of that sentiment. The undersigned asks this Court to show Mr. Banks the mercy that he did not see on the streets as a child. Mr. Banks does not ask for the naïve mercy of complete forgiveness, but, rather, the thoughtful mercy that grants hope to the convicted. Prison sentences should (ideally) encourage people to improve themselves, not just in the sense of providing vocational training, but to improve themselves as people. To give Mr. Banks a sentence between 20 and 45 years would be to tell him that he has no reason to hope, no reason to make himself better. He has been cast out of a society. He is nothing. That is more than Mr. Banks deserves in this case.

The undersigned asks that this court grant Mr. Banks the mercy that gives him the ability to hope for a future outside of the oppressive walls of solitary confinement, that gives him something to look forward to and work for during the many lonely nights and days that stretch out before him. He asks for the hope that inspires a man who has done wrong to better himself, and to see the error of his ways so that, after he has done his time, he can prove himself to be the better man he has so much desires to be. A sentence of 15 years gives Mr. Banks that chance.

WHEREFORE, the Defendant, JOSE BANKS, asks this court to impose a sentence of 15 years or less.

Respectfully submitted,

By:     s/ Beau B. Brindley
        s/ Michael J. Thompson

        Attorneys For Defendant

JOSE BANKS

Beau Brindley
LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, IL 60604
312-765-8878